UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

**THE COMPLETE ANGLER, LLC, et al.,**

    Plaintiffs,

vs.                                             **Case No.: 8:09-CV-0346-T-27EAJ**

**CITY OF CLEARWATER, FLORIDA,**

    Defendant.
_____/

## REPORT AND RECOMMENDATION

Before the court is Plaintiffs' **Motion for Preliminary Injunction** (Dkt. 3), filed February 24, 2009, and Defendant's **Response** (Dkt. 17), filed March 9, 2009. On February 25, 2009, Plaintiffs' motion was referred to the undersigned for a report and recommendation. On March 4, 2009, the court held a hearing on Plaintiffs' motion at which both sides presented evidence and legal argument.[1] As stated hereafter, Plaintiffs' motion should be granted in part as to their "as-applied" First Amendment claim.

## Findings of Fact

1. In December 2007, Heriberto and Lorraine Quintero ("the Quinteros") purchased and renovated the building at 705 Ft. Harrison Avenue in Clearwater, Florida.

2. They opened a bait and tackle shop called The Complete Angler, L.L.C. ("the Angler"), which is a duly registered Florida corporation owned by the Quinteros.

3. The property is zoned commercial.

---

[1] Defendant's response was originally filed on March 3, 2009, before the hearing (Dkt. 13). Defendant amended its response on March 9, 2009, to correct the date it was submitted to the court and the date it was electronically served (Dkt. 17 at 1).

4. The Angler provides drive-through access to the Seminole Street boat ramp and sells live and frozen bait, snacks and drinks, boat accessories, and custom rods and reels.

5. The Angler does not sell game fish, local or otherwise.

6. The Quinteros commissioned Matt Evanson, a local artist, to create a painting ("the Painting") on the exterior wall of the Angler that would educate the public about the endangerment of game fish found in the local habitat.

7. The Painting contains no text and depicts a snook, a redfish, a tarpon, a dolphin (mahi-mahi), a Nassau grouper, and a sailfish (Plaintiffs' Ex. 1).

8. The Painting spans most of the Angler's western wall.

9. On March 12, 2008, Defendant City of Clearwater ("the City") issued the Angler a Notice of Violation citing its failure to obtain a sign permit for the Painting as required by Defendant's Community Development Code ("the Code") (Plaintiffs' Ex. 2).

10. The Angler pled <u>nolo contendere</u> and on January 9, 2009, paid fines and court costs in the amount of $690.00.

11. On January 12, 2009, Heriberto Quintero covered the Painting with a tarp and a banner ("the Banner").

12. The Banner contains the complete text of the First Amendment and the comment that: "THE SUPREME COURT REQUIRES THE GOVERNMENT TO PROVIDE SUBSTANTIAL JUSTIFICATION FOR THE INTERFERENCE WITH THE RIGHT OF FREE SPEECH WHERE IT ATTEMPTS TO REGULATE THE CONTENT OF THE SPEECH" (Plaintiffs' Ex. 6).

13. The Painting remains on the wall behind the tarp and the Banner (Plaintiffs' Ex. 6).

14. On February 12, 2009, Defendant issued the Angler a second Notice of Violation ("the Notice") regarding both the Painting and the Banner (Plaintiffs' Ex. 7).[2]

15. At the March 4, 2009 hearing, Heriberto Quintero testified that the Painting will alert viewers to the threat of extinction posed to the species of fish depicted therein.

## Standard of Review

When seeking a preliminary injunction, a plaintiff must establish "that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." Winter v. NRDC, Inc., 129 S. Ct. 365, 374 (2008). Given the "extraordinary and drastic" nature of preliminary injunctions, they may be granted only where the plaintiff clearly satisfies the burden of persuasion as to each of these requirements. All Care Nursing Serv., Inc. v. Bethesda Mem'l Hosp., Inc., 887 F.2d 1535, 1537 (11th Cir. 1989). To meet its burden the plaintiff may rely on affidavits and hearsay materials that would not be admissible as evidence for the entry of a permanent injunction. Levi Strauss & Co. v. Sunrise Int'l Trading Inc., 51 F.3d 982, 985 (11th Cir. 1995).

## Conclusions of Law

Plaintiffs challenge the constitutionality of a comprehensive scheme of sign regulations intended by the City to "promote the public health, safety and general welfare." § 3-1802. Underlying these sign regulations are the following general principles:

> The city is a resort community on the west coast of the state with more than five miles of beaches on the Gulf of Mexico. This city has an economic base which relies

---

[2] In its response, Defendant suggests that the Notice applied only to the Banner (Dkt. 17 at 3). At the hearing, however, Defendant conceded that the Notice applied to both the Painting and the Banner. Because the provisions cited in the March 2008 notice regarding the Painting were reasserted in the February 2009 notice, the court focuses on the latter and refers to it as the Notice.

3

heavily on tourism. In order to preserve the city as a desirable community in which to live, vacation and do business, a pleasing, visually attractive urban environment is of foremost importance. The regulation of signs within the city is a highly contributive means by which to achieve this desired end. These sign regulations are prepared with the intent of enhancing the urban environment and promoting the continued well-being of the city.

§ 3-1801.

To achieve these goals, the Code prohibits some signs, such as balloons or inflatables; bench signs; changeable message signs; signs that reflect lighting onto public rights-of-way thereby creating a potential traffic or pedestrian hazard; signs that move, revolve, twirl, rotate, or flash, including animated signs; or signs that are placed on a tree or other vegetation. § 3-1803(B), (C), (D), (N), (O), and (R).

Section 3-1804 outlines general standards for signs not otherwise prohibited. Standards are provided regarding setbacks, neon signs, illuminated signs, banners and flags, gasoline price signs, time and temperature signs, and building/electrical codes.

Section 3-1805 identifies twenty-six categories of signs not requiring a permit or development review. One such exemption is made for "[a]rt work and/or architectural detail," § 3-1805.B, defined as "drawings, pictures, symbols, paintings or sculpture which do not identify a product or business and which are not displayed in conjunction with a commercial, for profit or nonprofit enterprise." § 8-102.[3] Another exemption is provided for holiday decorations, § 3-1805.D, defined as "any display during a holiday season which shall be removed within ten days of the conclusion of the holiday." § 8-102.

Finally, Section 3-1806 governs signs requiring a permit and development review. Different

---

[3] Section 8-102 provides general definitions for the entire Code.

regulations apply based on whether a sign is located in a residential or non-residential district. In residential districts, permits are required for subdivision signs, school and park monument identification signs, and adopt-a-park signs. In non-residential districts, permits are required for freestanding signs, monument signs, attached signs, and transit/shelter signs.

The Notice expressly cited the Angler for violations of §§ 3-1806.B.3.A, 3-1804.D, and 4-1002.[4] Section 3-1806.B.3.A limits the number and size of attached signs[5] in non-residential districts. A business establishment with a principal exterior entrance, such as the Angler, may have one attached sign no larger than the greater of: 1) 20 square feet; or 2) 1 square foot per 100 square feet of the building facade facing the street frontage to which the sign is to be attached.[6] Section 3-1804.D allows banners or flags to be used as attached signs subject to the district's spatial limitations. Finally, § 4-1002 requires that a permit be obtained before erecting any sign not otherwise exempted from the permit requirement.

In their complaint, Plaintiffs assert three First Amendment challenges stemming from the Notice. First, Plaintiffs argue that §§ 3-1805 and 3-1806.B.3.A are unconstitutional because the

---

[4] Because the Angler was expressly cited for violating these provisions, the Angler has standing to challenge them as applied to the Painting and the Banner. See Bonita Media Enters., LLC v. Collier County Code Enforcement Bd., No. 2:07-CV-411-FTM-29DNF, 2008 WL 423449, at *4 (M.D. Fla. Feb. 13, 2008); Lockridge v. City of Oldsmar, Fla., 475 F. Supp. 2d 1240, 1246 (M.D. Fla. 2007), aff'd, 273 F. App'x 786 (11th Cir. 2008) (per curiam) (unpublished). Although the Notice was not directed to the Quinteros personally, as owners of the Angler they also have standing to challenge these provisions. See e.g. Solomon v. City of Gainesville, 763 F.2d 1212, 1213 (11th Cir. 1985).

[5] An attached sign is defined as "any sign attached to, on or supported by any part of a building (e.g. walls, projecting, awning, windows, or canopy) which encloses or covers useable space." § 8-102.

[6] Because § 3-1806 regulates signs requiring a permit, its spatial limitations do not apply to signs exempted from the permit requirement in § 3-1805.

5

Code's definition of art work is overbroad, vague, and vests unbridled discretion in Defendant to determine whether art work is commercial or not (Dkt. 1 at 14). Second, Plaintiffs contend that §§ 3-1805 and 3-1806.B.3.A "vest unfettered discretion upon the City to restrict constitutionally expressive activities" (Id. at 15). Third, Plaintiffs submit that § 3-1804.D is unconstitutional because it sets a presumptive size limitation for banners but does not apply to banners displaying holiday-related messages (Id.). For each of these challenges, Plaintiffs assert the Code is unconstitutional both on its face and as applied to Plaintiffs.

**I. Whether the Painting and the Banner are Protected Speech**

As a threshold matter, the court must first determine whether the Painting and/or the Banner constitute speech protected by the First Amendment. DA Mortgage, Inc. v. City of Miami Beach, 486 F.3d 1254, 1265 (11th Cir. 2007). Like the written or spoken word, artistic expression enjoys First Amendment protections. Kaplan v. California, 413 U.S. 115, 119-20 (1973). Moreover, these protections extend to both commercial and non-commercial expression, albeit with more extensive protections afforded to the latter. Zauderer v. Office of Disciplinary Counsel of Supreme Court of Ohio, 471 U.S. 626, 637 (1985).

The fact that a speaker is a corporate entity does not render its speech per se commercial. See Austin v. Mich. Chamber of Commerce, 494 U.S. 652, 657 (1990) (noting strict scrutiny applies to corporate political speech); see e.g. Gorran v. Atkins Nutritionals, Inc., 279 F. App'x 40, 41-42 (2d Cir. 2008) (per curiam) (unpublished) (finding corporate entity's website contained both commercial and non-commercial speech). Rather, commercial speech is "usually defined as speech that does no more than propose a commercial transaction." United States v. United Foods, Inc., 533 U.S. 405, 409 (2001). It has also been characterized as "expression related solely to the economic

6

interests of the speaker and its audience." Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of N.Y., 447 U.S. 557, 561 (1980).

Neither the Painting nor the Banner are commercial speech. Plaintiffs' assertion that the Painting reflects a local artist's impression of the "natural habitat and waterways" surrounding the Angler (Dkt. 1 at 3) is supported by a preponderance of the credible evidence. Moreover, Heriberto Quintero testified that the Painting will alert viewers to the threats posed to certain fish species it depicts. Although the Painting may occasionally inspire the purchase of bait and tackle from the Angler, the Painting is not limited to merely proposing commercial transactions.

Nonetheless, the City would classify the Painting as commercial speech. The Code states that paintings are not art work if they are displayed "in conjunction with" a commercial enterprise. § 8-102. The City concluded that the Painting was displayed "in conjunction with" the Angler and that it was thus not art work. Whether or not the Code's definition of art work withstands constitutional scrutiny on its face, the City's application of the definition impermissibly treated Plaintiffs' non-commercial speech as commercial speech. The City may not skirt First Amendment protections by applying a definition of commercial speech that better suits its tastes.

As for the Banner, it is even further removed from Plaintiffs' economic interests. Neither the text of the First Amendment nor the remaining text on the Banner, espousing the Quinteros' personal views on First Amendment law, is commercial speech. Therefore, both the Painting and the Banner are non-commercial speech protected by the First Amendment.

## II. **Whether Defendant's Application of the Code was Content-Based or Content-Neutral**

Having established that, as applied to Plaintiffs, the City's enforcement of the Code was a restriction on non-commercial speech, the court must next determine whether the Notice was issued

based on the content of the Painting or the Banner. Regulations "'justified without reference to the content of the regulated speech'" are content-neutral. DA Mortgage, 486 F.3d at 1266 (quoting Clark v. Cmty. for Creative Non-Violence, 468 U.S. 288, 293 (1984)). Such regulations are justified under the intermediate scrutiny test which requires they: 1) be narrowly tailored to serve a significant governmental interest; and 2) leave open ample alternative channels of communication. Id. If, however, a regulation grants certain types of speech favorable treatment due to the content of the message, the regulation is content-based and subject to strict scrutiny. Id.

On its face, the Notice does not suggest that Defendant considered the content of the Painting or the Banner before citing the Angler. The Notice merely states that both signs were erected without a permit and exceeded the maximum area allowed for freestanding and/or attached signs.

Yet in concluding that the Painting and the Banner were subject to the permit requirement or spatial constraints, Defendant necessarily examined their content and determined that neither was art work, a holiday decoration, or any other sign exempted under the Code. The City then declined to extend protections to Plaintiffs' First Amendment banner that would have been extended to a banner exclaiming "Happy Holidays." See Solantic, LLC v. City of Neptune Beach, 410 F.3d 1250, 1265 (11th Cir. 2005) (faulting a sign ordinance's content-based holiday decorations exemption because "a homeowner could plant a giant illuminated Santa Claus or a jack-o-lantern in his front yard, but not a figure of, say, the President or the Mayor. An illuminated reindeer would be permissible, whereas a less festive animal such as a dog would not.").

Indeed, Defendant itself has provided evidence that it would have tolerated the Painting and/or the Banner had they contained alternate content. Defendant's "spokeswoman" is quoted in a local newspaper as stating that the Painting is considered commercial "signage" but "a mural of

kids playing in a park . . . would be acceptable" (Plaintiffs' Ex. 4).[7] As for the Banner, Defendant's Planning Director testified that he believed a banner of the same size and material displaying the American Flag would not have violated the Code.[8] See Dimmitt v. City of Clearwater, 985 F.2d 1565, 1571-72 (11th Cir. 1993) (noting testimony by city's development code administrator that sign ordinance was administered based in part upon the type and content of the expression).

Finally, Plaintiffs offered several exhibits indicating that other businesses and governmental entities in the City display murals.[9] A mural completely covering one wall of a daycare center depicts children running through a green field surrounded by animals (Plaintiffs' Ex. 9). The walls of a seafood restaurant are painted with various images of marine life (Plaintiffs' Ex. 10). A building related to the administration of the fire department is covered on one side by a mural depicting first responders beneath the statement "UNITED WE STAND" (Plaintiffs' Ex. 11). A county building displays painted dolphins swimming near a ring of fire and various species of fish (Plaintiffs' Ex. 12). Finally, the outer wall of Defendant's parking garage is lined with paintings of different species of birds (Plaintiffs' Ex. 13).[10] Defendant's condoning of these murals, coupled with statements by its own representatives and its content-based categorization of Plaintiffs' signs, indicates that

---

[7] Presumably, this statement was premised on the City's conclusion that the Painting was commercial speech. As stated above, this conclusion was flawed. Regardless, the statement is evidence that the City looked at more than just the Painting's size.

[8] The Planning Director testified that he thought there was a provision in the Code exempting the American Flag but not the text of the First Amendment.

[9] Heriberto Quintero testified that he performed an electronic records search but was unable to find records indicating these other entities obtained permits for their murals or received citations for them. No contrary evidence was offered by Defendant.

[10] The City acknowledged that the Code applies equally to City property.

Defendant's application of the Code to the Angler was not content-neutral.[11]

### III. Whether Defendant's Application of the Code Withstands Strict Scrutiny

Because the Code was applied to the Painting and the Banner based on their content, its application must withstand strict scrutiny to be constitutional. To pass strict scrutiny, content-based regulations on non-commercial speech must be narrowly tailored to serve a compelling government interest. United States v. Playboy Entm't Group, Inc., 529 U.S. 803, 813 (2000).

Defendant has failed to establish that its interests, as stated in the Code, are truly compelling for purposes of strict scrutiny. Indeed, courts have consistently recognized that while interests in aesthetics and traffic safety may be substantial, they are not per se so compelling as to justify content-based restrictions on signs. See Beaulieu v. City of Alabaster, 454 F.3d 1219, 1233-34 (11th Cir. 2006); Solantic, 410 F.3d at 1268. Although the government is not precluded from demonstrating a compelling interest in, e.g., traffic safety, abstract notions will not suffice. Beaulieu, 454 F.3d at 1234; Solantic, 410 F.3d at 1268. Based on the current record, Defendant has failed to demonstrate that its interests are compelling in these circumstances.

Further, because the City has not shown how its favorable treatment of certain messages promotes its purported interests, the Code is not narrowly tailored. See Beaulieu, 454 F.3d at 1234; Solantic, 410 F.3d at 1268. Accordingly, Defendant's application of the Code to the Painting and the Banner fails strict scrutiny. Indeed, the City conceded at the hearing that if strict scrutiny were the standard, it would have a difficult burden.

### Conclusion

---

[11] As stated above, even if the Painting or the Banner exceeded the spatial limitations in § 3-1806.B.3.A, the City examined their content to decide whether they were subject to § 3-1805 or § 3-1806 to begin with.

Plaintiffs have established that they are likely to succeed on the merits of their as-applied challenge to certain provisions of the Code. Plaintiffs have further met their burden of persuasion as to the remaining requirements for a preliminary injunction. Because Plaintiffs' First Amendment rights are at risk via direct penalization by the government, an injunction is the proper remedy. KH Outdoor, LLC v. City of Trussville, 458 F.3d 1261, 1271-72 (11th Cir. 2006).[12] Moreover, as Defendant has no interest in enforcing a regulation which is unconstitutional as to Plaintiffs, the balance of equities tips in favor of Plaintiffs' interest in preventing infringement of their First Amendment rights. See id. Finally, an unconstitutional application of the Code does nothing to promote the public interest. See id. Accordingly, the court recommends that Defendant be preliminarily enjoined from: 1) compelling Plaintiffs to remove either the Painting or the Banner; or 2) prosecuting violations of §§ 3-1806.B.3.A, 3-1804.D, or 4-1002 in connection with the Painting or the Banner.[13]

---

[12] Defendant argues that "[s]ince Plaintiff Angler has remedies under state law, no irreparable harm will occur to it prior to the resolution of this case" (Dkt. 17 at 13). Defendant overlooks that "'[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury.'" KH Outdoor, 458 F.3d at 1271-72 (quoting Elrod v. Burns, 427 U.S. 347, 373 (1976) (plurality opinion)).

[13] Because Plaintiffs are entitled to preliminary injunctive relief regarding their as-applied challenge, the court declines to address the merits of Plaintiffs' facial challenge at this time. See Renne v. Geary, 501 U.S. 312, 324 (1991) (noting the "better course" might have been to resolve as-applied challenge to speech regulation before considering facial challenge); Bd. of Trustees of State Univ. of N.Y. v. Fox, 492 U.S. 469, 484-85 (1989) ("It is not the usual judicial practice, . . . nor do we consider it generally desirable, to proceed to an overbreadth issue unnecessarily - that is, before it is determined that the statute would be valid as applied."); see also United States v. Booker, 543 U.S. 220, 314 (2005) (Thomas, J., dissenting in part) ("When a litigant claims that a statute is unconstitutional as applied to him, and the statute is in fact unconstitutional as applied, we normally invalidate the statute only as applied to the litigant in question. We do not strike down the statute on its face."); Los Angeles Police Dep't v. United Reporting Publ'g Corp., 528 U.S. 32, 45 (1999) (Stevens, J., joined by Kennedy, J., dissenting) (noting overbreadth doctrine should not be invoked where application of regulation to claimant is at issue because it is "only relevant if the challenger

Pursuant to Rule 65(c), Fed. R. Civ. P., a court "may issue a preliminary injunction . . . only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Despite the mandatory nature of this language, "federal courts have come to recognize that the district court possesses discretion over whether to require the posting of security." Popular Bank of Fla. v. Banco Popular de Puerto Rico, 180 F.R.D. 461, 463 (S.D. Fla. 1998). Waiving the bond requirement is particularly appropriate where a plaintiff alleges the infringement of a fundamental constitutional right. See e.g. All States Humane Game Fowl Org. v. City of Jacksonville, Fla., No. 3:08-CV-312-J-33MCR, 2008 WL 2949442, at *13 (M.D. Fla. July 29, 2008); Johnston v. Tampa Sports Authority, No. 8:05-CV-2191-T-27MAP, 2006 WL 2970431, at *1 (M.D. Fla. Oct. 16, 2006). Accordingly, the court recommends that the bond requirement be waived in this instance.

It is therefore **RECOMMENDED** that:

(1) Pending final resolution of this action, Plaintiffs' Motion for Preliminary Injunction (Dkt. 3) be **GRANTED** to the extent that the City is enjoined from: 1) compelling Plaintiffs to remove either the Painting or the Banner; or 2) prosecuting violations of §§ 3-1806.B.3.A, 3-1804.D, or 4-1002 in connection with the Painting or the Banner; and

(2) The security requirement in Rule 65(c), Fed. R. Civ. P., be **WAIVED**.

---

needs to rely on the possibility of invalid applications to third parties" ); Int'l Soc. for Krishna Consciousness of Houston, Inc. v. City of Houston, Tex., 689 F.2d 541, 552 (5th Cir. Unit A 1982) ("The current judicial popularity of the overbreadth doctrine does not mean that the 'unconstitutional-as-applied' principle has flown out the window in first amendment cases."). Nor is it necessary to address Plaintiffs' standing to challenge provisions of the Code other than those cited in the Notice.

**Date:** March 13, 2009

/s/ Elizabeth A. Jenkins
ELIZABETH A JENKINS
United States Magistrate Judge

**NOTICE TO PARTIES**

Failure to file written objections to the proposed findings and recommendations contained in this report within ten (10) days from the date of this service shall bar an aggrieved party from attacking the factual findings on appeal. See 28 U.S.C. § 636(b)(1).

Copies to:
Counsel of Record
District Judge